

ORIGINAL
U.S. DISTRICT COURT

2007 AUG 23 AM 9: 54

_E. Bacon_

CLERK
S.D. OF GA.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| SAVANNAH-CHATHAM COUNTY FAIR HOUSING COUNCIL, INC.; JERALD WILLIAMS; and AMANDA WILLIAMS,<br><br>       Plaintiffs,<br><br>vs.<br><br>DARWIN K. MORGAN, individually and dba MORGAN MOBILE PARK; and D.K. MORGAN CONSOLIDATED, LLC, individually and dba MORGAN MOBILE PARK,<br><br>       Defendants. | Case No. CV 4,07 - 125 |

### COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF; DEMAND FOR TRIAL BY JURY

### I. INTRODUCTION

1.     In this action, plaintiffs allege that defendants, owners and operators of a local mobile home park, discriminate on the basis of race, or color, or both in violation of the federal Fair Housing Act and Civil Rights Act of 1866.

### II. JURISDICTION AND VENUE

2.     Jurisdiction is conferred on this Court by 42 U.S.C. § 3613 and by 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States.

3.     Venue is proper under 28 U.S.C. § 1391 in that the claims alleged herein

include claims which arose within the County of Chatham, Georgia, and concern or otherwise relate to real properties located there.

### III. **PARTIES**

4.     Plaintiff Savannah-Chatham County Fair Housing Council, Inc., ("SCFHC") is a nonprofit Georgia corporation organized under the laws of Georgia with its principal place of business located in Savannah, Georgia.  One of SCFHC's specific purposes and goals is the promotion of equal opportunity in the sale of housing and the elimination of all forms of illegal housing discrimination.  To this end, the activities in which SCFHC engages include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting investigations of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; (4) providing outreach and education to the community, including housing providers and consumers, regarding fair housing; and, (5) monitoring and training housing providers that have previously engaged in discriminatory practices.

5.     Plaintiffs Jerald Williams and Amanda Williams, husband and wife, are United States citizens and residents of Georgia.  Mr. Williams is black; Ms. Williams is white.

6.     Defendant Darwin K. Morgan, is the operator of Morgan Mobile Park and owner of the defendant D. K. Morgan Consolidated, LLC.  The Morgan Mobile Park ("the Park") is a dwelling within the meaning of the Fair Housing Act.

7.     On April 24, 2007, defendant Darwin K. Morgan quit-claimed his ownership interest in the Morgan Mobile Park to defendant D. K. Morgan Consolidated, LLC.

8.      Each defendant was acting as the agent of each other defendant. Accordingly, each defendant is jointly and individually liable for the discriminatory housing practices alleged herein.

## IV. FACTS

### A. Introduction

9.      Defendants, acting individually or in concert, have engaged in a pattern or practice of discrimination on the basis of race or color in connection with the ownership or operation of dwellings at Morgan Mobile Park. Defendants have pursued this pattern or practice of discrimination with the purpose or effect of excluding African-Americans and other persons of color from residing or visiting at those dwellings or enjoying those dwellings fully and on an equal basis with white persons.    Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation. Defendants' illegal acts include, but are not limited to:

a.      Discriminating in the rental of, or otherwise making unavailable or denying, a dwelling to any renter because of race or color or both;

b.      Imposing different terms, conditions, or privileges relating to the rental of dwellings because of because of race or color or both;

c.      Making statements indicating a limitation, preference or discrimination, or the intent to discriminate, based on race or color or both;

3

d.    Misrepresenting the availability of dwellings for rent because of race or color or both;

e.    Threatening, intimidating, or interfering with tenants in their enjoyment of dwellings because of race or color or both;

f.    Retaliating against tenants who exercised their fair housing rights;

g.    Creating, perpetuating, and subjecting tenants to a hostile environment because of race or color or both; and,

h.    Making oral inquiry concerning race or color to tenants and prospective tenants and making inquiry about guests, other tenants and other prospective tenants.

**B. Jerald and Amanda Williams Seek Housing from Defendants.**

10.    On Tuesday, March 27, 2007, Amanda Williams saw a for rent sign advertising a mobile home for rent at the Morgan Mobile Park, telephoned the number listed on the sign, and spoke with Mr. Morgan. Ms. Williams asked about dwellings for rent. Mr. Morgan told Ms. Williams that there were two dwellings available for rent and described their size and rental rates. Mr. Morgan and Ms. Williams agreed that Ms. Williams and her husband would meet Mr. Morgan at the Park the next day to inspect the dwellings for rent and complete the rental application process.

11.    On Wednesday, March 28, 2007, Ms. Williams telephoned Mr. Morgan and confirmed the time and location of their meeting that day to inspect the dwellings for rent.

12.    Shortly thereafter, on that same date, Mr. and Ms. Williams drove to the Park for the meeting with Mr. Morgan. As they drove into the Park, they saw the man whom they later learned was Darwin Morgan. Mr. Morgan was looking at them and shaking his

4

head.  Mr. and Ms. Williams parked their car, got out and approached Mr. Morgan.  After Ms. Williams introduced herself and her husband, Mr. Morgan stated, "Y'all need to go somewhere else."  Mr. Morgan turned away, got into a utility cart, and drove away, leaving Mr. and Ms. Williams standing alone in the Park.

### C. Mr. and Ms. Williams Complain to SCFHC about Defendants.

13.     On Thursday, March 29, 2007, Ms. Williams contacted the City of Savannah to complain about Mr. Morgan's conduct.  The City referred her to SCFHC.

14.     On Friday, March 30, 2007, Mr. and Ms. Williams filed a housing discrimination complaint with SCFHC concerning Mr. Morgan's conduct.

### D. SCFHC Investigates Defendants.

15.     Based on the Williamses' complaint, SCFHC conducted an investigation using fair housing testers.

16.     On Tuesday, May 8, 2007, at approximately 12:30 p.m., Kelly, a white woman, and Ronald, a black man, posing as an interracial couple looking for housing, contacted Mr. Morgan at the Park asking about vacancies for rent.  Mr. Morgan told Kelly and Ronald that there were no vacancies available for rent, even though there was a for rent sign posted at the entrance of the Park.  Mr. Morgan did not show any dwellings to Kelly and Ronald.  Neither Kelly nor Ronald received any follow up contact from Mr. Morgan.

17.     On Tuesday, May 8, 2007, at approximately 2:00 p.m., Christian, a white man, posing as a husband looking for housing for himself and his wife, contacted Mr. Morgan at the Park asking about vacancies for rent.  Mr. Morgan told Christian that there

5

were was a dwelling for rent, and showed a dwelling to Christian.   Mr. Morgan told Christian that a  couple had just visited the Park seeking housing.   Mr. Morgan described the couple as follows: "She seemed like a nice girl.  Too bad she was married to a nigger."

18.     On Friday, May 11, 2007, Mr. Morgan telephoned Christian stating that there was now a three-bedroom dwelling available for rent, and he encouraged Christian to convince his wife to move into the Park.

### E. SCFHC's Efforts to Counteract the Effects of the Discrimination.

19.     Upon confirming that Mr. Morgan engaged in discriminatory housing practices, SCFHC conducted education and outreach efforts to residents of the Park. On July 31, 2007, the SCFHC mailed fair housing material to each dwelling a the Park. These materials informed residents of the requirements of the federal Fair Housing Act generally and provided information about SCFHC.

20.     Since that education and outreach effort, SCFHC has received calls from and advised persons at the Park about their fair housing rights.

### F. Injuries

21.     By reason of defendants' unlawful acts or practices, plaintiffs suffered emotional distress, and physical injury, including humiliation, embarrassment and attendant bodily injury, including but not limited to headaches and stomachaches, violation of their civil rights, loss of dignity and loss of an important housing opportunity. Accordingly, plaintiffs are entitled to compensatory damages.

22.     SCFHC has diverted resources as a result of defendants' discriminatory conduct:  (1) to investigate and determine the existence, nature and extent of

6

defendants' discriminatory housing practices; (2) to educate and perform outreach to the residents of Morgan Mobile Park to inform them of their fair housing rights; and (3) to protect the fair housing rights of their members, associates and constituents from the continued discrimination of the defendants based on race or color.

23.     As a result of defendants' unlawful acts and practices, SCFHC has suffered injury to its ability to carry out its purpose and to serve the public in its efforts to eliminate housing discrimination, to resolve fair housing disputes, to make available decent housing for persons regardless of disability and to assure rights to the important social, professional, business, economic and political benefits of associations that arise from living in a community free from discrimination.  Defendants' unlawful acts and practices also have caused SCFHC to suffer economic losses and out-of-pocket expenditures, incurring costs in efforts to counteract and eliminate discriminatory housing practices.  As a result of defendants' unlawful acts and practices, the ability of SCFHC to perform its customary counseling, referral, outreach and education activities has been impaired, and it has suffered a decrease in its ability to undertake other efforts to end unlawful housing practices.  Accordingly, SCFHC is entitled to compensatory damages.

24.     In doing the acts of which plaintiffs complain, defendants acted with conscious or reckless disregard of the federally protected rights of plaintiffs. Accordingly, plaintiffs are entitled to punitive damages.

25.     There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws.  Accordingly, plaintiffs are entitled to declaratory relief.

26.     Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and their pattern or practice of discrimination unless relief is provided by this Court.  Accordingly, plaintiffs are entitled to injunctive relief.

## V.  CLAIMS

### A.  FIRST CLAIM

### [Fair Housing Act]

### [All Plaintiffs vs. All Defendants]

27.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

28.     Defendants have injured plaintiffs by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq.

### B.  SECOND CLAIM

### [Civil Right Act of 1866]

### [Amanda and Jerald Williams Only vs. All Defendants]

29.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

30.     Defendants have injured plaintiffs Amanda Williams and Jerald Williams by discriminating against them in the rental of housing because of race or color in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.

8

## VI.  RELIEF

Wherefore, plaintiffs pray for entry of a judgment against the defendants that:

1.      Awards compensatory and punitive damages according to proof;

2.      Declares that defendants have engaged in discriminatory housing practices in violation of federal fair housing laws;

3.      Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal opportunities to persons regardless of their race or color or both;

4.      Awards costs of this action, including reasonable attorneys' fees; and,

5.      Awards all such other relief as the Court deems just.

///

///

///

///

## VII. <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby requests a jury trial.

Dated:   August 20, 2007.

Respectfully submitted,

BRANCART & BRANCART

_____
Christopher Brancart (CA Bar No. 128475)
Post Office Box 686
Pescadero, California   94060
Tel:     (650) 879-0141
Fax:     (650) 879-1103

JOHN PAUL BERLON
   John Paul Berlon (GA Bar No. 054283)
Post Office Box 10745
Savannah, GA   31412
Tel:     (912) 352-1784
Fax:     (912) 352-3945

Attorneys for Plaintiffs